UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| CHARLES W. HAAN, | * | CIV 14-3009-RAL |
| | * | |
| Petitioner, | * | |
| | * | |
| vs. | * | |
| | * | OPINION AND ORDER |
| JASON M. GANT, in his official duty | * | GRANTING SUMMARY |
| and obligation as the South Dakota | * | JUDGMENT TO DEFENDANT |
| Secretary of State - Elections, | * | |
| | * | |
| Respondent. | * | |

## I. Procedural History

On July 23, 2014, Charles W. Haan filed a Petition for Writ of Mandamus and paid the $400.00 filing fee to start a civil case. Haan, who was proceeding pro se, filed no other pleadings. Haan sought to have Defendant Jason M. Gant, the South Dakota Secretary of State, immediately certify Haan as a Constitution Party candidate for the United States House of Representatives in the November election in South Dakota. Doc. 1.

Haan did not file a Complaint, even though Rule 3 of the Federal Rules of Civil Procedure directs that "[a] civil action is commenced by filing a complaint with the court." Haan did not serve a summons with the Petition or any complaint on Gant, notwithstanding the requirements of Rules 4 and 5 of the Federal Rules of Civil Procedure. The unusual manner in which Haan chose to proceed resulted in delay in the case coming to the attention of this Court. That is, Haan did not serve Gant and filed no motion—despite Rule 7(b)(1) of the Federal Rules of Civil Procedure requiring that a "request for a court order must be made by motion."

Although this Court could have let the case languish, the public interest and time constraints involved prompted this Court to proceed. Through an Order dated August 29, 2014,

this Court chose to construe the Petition for Writ of Mandamus as Haan's Complaint as time was short before the November election and the relief Haan sought was evident from the Petition. Doc. 4. This Court also directed service on Gant and scheduled a hearing for September 8, 2014. Doc. 4.

On September 5, 2014, Gant filed a Verified Answer and Motion for Judgment on the Pleadings or in the Alternative, Motion for Summary Judgment. Doc. 7. Gant filed a Memorandum and submitted a series of exhibits. Doc. 8; see Docs. 8-1–8-11. On the day of the September 8, 2014 hearing, Gant filed a Supplemental Memorandum and two more documents. Doc. 10; see Docs. 10-1–10-2. Haan likewise on September 8 filed an Affidavit to Support an Order for Writ of Mandamus, with attachments thereto. Doc. 11; see Docs. 11-1–11-5.

Two matters became clear at the September 8, 2014 hearing. First, both parties wanted a prompt ruling from the Court. Gant already had printed and distributed ballots omitting Haan's name, and the November election is within two months. Thus, neither party was interested in the formalities of twenty-one days to respond to the Statement of Undisputed Material Facts and fourteen days to reply as contemplated in the Civil Local Rules for the District of South Dakota. Second, no genuine issue of material fact existed. Haan contested Gant's application of state statutes and relied on language in the United States Constitution and his own sense of what the law ought to be for his inclusion as a candidate for the United States House of Representatives. Gant disagreed with Haan's interpretation of law. However, neither Haan nor Gant dispute the facts of this case established through the materials submitted.

**II.   Undisputed Material Facts**

Haan initially wanted to run as an Americans Elect candidate for the United States House of Representatives from South Dakota. Doc. 11. After exploring that possibility and considering the platform of the South Dakota Constitution Party, Haan chose to join the Constitution Party. The South Dakota Constitution Party was formed on March 1, 2004, by obtaining signatures of at least 2.5% of the voters of the state as shown by the total votes cast for Governor in the preceding gubernatorial election. Doc. 8-1 at 2; see S.D. Codified Laws (SDCL) § 12-5-1 (setting forth requirements to organize new political party). In 2006, Steven J. Willis qualified as the Constitution Party candidate for Governor of South Dakota by filing a petition with at least 250 signatures of Constitution Party members. Doc. 8-1 at 2. Willis ultimately received 4,010 votes or 1.2% of the vote for Governor. Doc. 8-1 at 2. The South Dakota Constitution Party lost party status in 2006 when its candidate Willis failed to receive 2.5% of the vote. Doc. 8-1 at 2; see SDCL § 12-1-3(10) (defining a "Political party" as "a party whose candidate for Governor at the last preceding general election at which a Governor was elected received at least two and one-half percent of the total votes for Governor").

Under SDCL section 12-5-1, the South Dakota Constitution Party again regained new party status on April 18, 2012. Doc. 8-1 at 2. Gant specifically informed the Constitution Party in writing that, "a Gubernatorial, US Congress, and US Senate candidate must gather two hundred and fifty signatures" to get on the ballot as a Constitution Party candidate. Doc. 8-2. Gant also advised that the offices for which candidates must be nominated at the South Dakota Constitution State Party convention were "Secretary of State, Attorney General, State Treasurer, State Auditor, Commissioner of School and Public Lands and Public Utilities Commissioner." Doc. 8-2.

On March 17, 2014, eight days before the filing deadline for submitting a nominating petition, Haan took out a nominating petition as a Constitution Party candidate for the United States House of Representatives. Doc. 8-1 at 3; Doc. 8-3 at 2; Doc. 11 at 2. In an eight-day period, Haan traveled the state to collect 204 signatures, 140 of which were valid signatures of South Dakota Constitution Party members. Doc. 8-1 at 3; Doc. 8-3; Doc. 11 at 2. At that time, the South Dakota Constitution Party only had somewhere between 400 and 600 members. Doc. 8-1 at 3–4.

Haan presented his nominating petition as a Constitution Party candidate for the United States House of Representatives, by means of registered mail, to Gant on March 26, 2014. Doc. 8-1 at 3. Gant deemed the submission timely because it had been sent by registered mail and postmarked on the filing deadline of March 25, 2014. Doc. 8-1 at 3; Doc. 8-3. The Secretary of State's Office performed an examination of the nominating petition and determined that Haan had submitted 204 signatures, of which only 140 were valid. Doc. 8-1 at 3. On March 27, 2014, Gant informed Haan by letter that his nominating petition was denied because he failed to collect 250 valid signatures of registered Constitution Party members as required by SDCL section 12-5-1.4. Doc. 8-1 at 3; Doc. 8-4.

On March 30, 2014, Gant's office received an email from Lori Stacey, State Chairwoman of the Constitution Party of South Dakota, with an attached letter dated March 28, 2014, purporting to certify Haan as the Constitution Party's 2014 nominee for the United States House of Representatives. Doc. 8-1 at 4; Doc. 8-5. On April 4, 2014, Gant's office received a letter from Haan, dated April 3, 2014, requesting that he be placed on the ballot as a candidate for the United States House of Representatives by reason of automatic nomination under SDCL section

4

12-6-9 and certification by Stacey. Doc. 8-1 at 5; Doc. 8-9. On May 30, 2014, Haan met with Gant in Pierre, South Dakota. Doc. 8-1 at 5. Gant informed Haan that because he failed to submit a nominating petition with 250 valid signatures of members of the Constitution Party, he could not be placed on the ballot of the General Election in November. Doc. 8-1 at 5.

Haan tried once again to have his name added to the November ballot. On June 30, 2014, Haan sent to Gant a Declaration of Candidacy as a United States citizen under Article I, Section 2 of the United States Constitution. Doc. 11 at 3; Doc. 11-2. Haan verified that he is at least twenty-five years of age, has been a United States citizen for more than seven years, and is a resident of the state of South Dakota, Doc. 11-2, which are the requirements defined in the United States Constitution for eligibility to serve in the United States House of Representatives, U.S. Const. art. I, § 2, cl. 2. Gant did not add Haan to the ballot and has begun printing and distributing ballots for the November election.

Haan filed a nearly identical Petition for Writ of Mandamus in state court on or about June 9, 2014. Doc. 10-1. On September 5, 2014, the Honorable John L. Brown signed an Order Granting Gant's Motion for Summary Judgment, denying Haan any relief, and upholding Gant's decision under South Dakota statutes to refuse to place Haan on the November General Election Ballot as a candidate. Doc. 10-2.

### III. Discussion

Gant has filed a motion for judgment on the pleadings or in the alternative for summary judgment. Doc. 7. A strict application of the Federal Rules of Civil Procedure, the well-pleaded complaint rule, and the limitations on federal court authority to issue writs of mandamus to compel state employees to follow state law provide arguable grounds for dismissal under Rule

12 of the Federal Rules of Civil Procedure. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105–06 (1984) (stating that federal courts have no authority to issue writs of mandamus to direct state officials to conform their conduct to state law); Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction."). However, this Court already has chosen to read Haan's Petition for Writ of Mandamus as a Complaint putting at issue whether his constitutional rights to be a candidate have been infringed, because that is the gist of his action and because the interests of the public and the parties ultimately lie with expeditious resolution of that question rather than forcing Haan to better plead his claim.

Gant asks that his motion be considered as one for summary judgment should this Court consider matters outside the pleadings. Federal Rule of Civil Procedure 12(d) directs that a motion under Rules 12(b)(6) or 12© be treated as a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Because this Court considered information outside of the initial pleadings submitted by both Haan and Gant, it treats Gant's motion as one for summary judgment.

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." S & A Farms, Inc. v. Farms.com, Inc., 678 F.3d 949, 952 (8th Cir. 2012) (quoting Morrison Enters., LLC v. Dravo Corp., 638 F.3d 594, 602 (8th Cir. 2011); see Fed. R. Civ. P. 56©. "The nonmoving party is entitled to all reasonable inferences that may be drawn from the evidence but not to inferences that may only be drawn by

resorting to speculation." Culton v. Mo. Dep't of Corrs., 515 F.3d 828, 830 (8th Cir. 2008) (quoting Williams v. City of Carl Junction, Mo., 480 F.3d 871, 873 (8th Cir. 2007)). The nonmoving party "must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." Williams, 480 F.3d at 873 (quoting FDIC v. Bell, 106 F.3d 258, 263 (8th Cir. 1997)).

The Supreme Court of the United States has recognized a candidate's constitutional rights under the First and Fourteenth Amendments to associate for political ends and to participate equally in the electoral process. See Burdick v. Takushi, 504 U.S. 428, 433 (1992); Anderson v. Celebrezze, 460 U.S. 780, 787–88 (1983). Ballot-access restrictions implicate the constitutional rights of voters to associate and cast their votes effectively. See Williams v. Rhodes, 393 U.S. 23, 30 (1968). However, there is an "important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot" as a way of "avoiding confusion, deception, and even frustration of the democratic process at the general election." Jenness v. Fortson, 403 U.S. 431, 442 (1971); see also Storer v. Brown, 415 U.S. 724, 732–33 (1974) (affirming California law requiring independent candidates to show substantial public support before being placed on a ballot).

In Anderson, the Supreme Court directed lower courts to balance the competing interests by first considering "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments," and then evaluating "the precise interests put forward by the State as justifications for the burden imposed by its rule." 460 U.S. at 789. In this evaluation of the candidates' rights and the State's interest, the court must determine the strength

and legitimacy of the State's interests and whether those interests make it necessary to burden the candidates' rights. Id. Weighing all of these factors, the court then must determine whether the rule is constitutional. Id.

The standard of review of the challenged statute depends on the extent of the burden imposed and the character of the right. If the state election scheme imposes "severe burdens" on constitutional rights, it may survive only if it is "narrowly tailored and advance[s] a compelling state interest." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997). If, on the other hand, the scheme imposes "reasonable, nondiscriminatory restrictions" upon the plaintiff's First and Fourteenth Amendment rights, it will survive so long as the State shows "important regulatory interests." Id. (quoting Burdick, 504 U.S. at 434).

Haan's primary legal argument at the September 8 hearing was that he should be allowed on the November ballot as a private citizen based on Article I, Section 2 of the United States Constitution, which provides:

> The House of Representatives shall be composed of Members chosen every second Year by the People of the several States . . . . No Person shall be a Representative who shall not have attained to the Age of twenty five years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

U.S. Const. art. I, § 2. Haan meets those requirements to be eligible as a candidate, but that alone does not entitle him automatically to be on the ballot because he requests it. Two sections later, the Constitution recognizes that the States shall have authority over holding and regulating elections by providing:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . .

Id. art. I, § 4. The Supreme Court has recognized the interest and authority of the state to require a candidate to meet a threshold showing of support through nominating petitions. Jenness, 403 U.S. at 442.

Haan could have collected signatures of at least 1% of those who voted in the last South Dakota gubernatorial election to become an independent candidate for the United States House of Representatives but did not do so. See SDCL § 12-7-1. That requirement is a burden, but not a severe burden, as demonstrated by the fact that two independent candidates for United States Senator from South Dakota fulfilled that requirement and will be on the November ballot. Thus, the question becomes whether Gant violated Haan's constitutional rights by not including him on the ballot as a Constitution Party candidate.

Haan challenges the South Dakota law requiring 250 signatures from members of a new party for a candidate for Congress to be listed on a primary ballot. See SDCL § 12-5-1.4(1). This is a ballot-access regulation. If the signature requirement imposes only reasonable and nondiscriminatory restrictions, then the State's regulatory interests will likely justify the restrictions. Timmons, 520 U.S. at 358.

In evaluating the reasonableness of the statute, this Court may consider "alleviating factors" provided in the statutory scheme. Swanson v. Worley, 490 F.3d 894, 904 (11th Cir. 2007); see also Storer, 415 U.S. at 740–41; Libertarian Party of Fla. v. Florida, 710 F.2d 790, 794 (11th Cir. 1983). Alleviating factors that would make the statute reasonable include allowing voters to sign the petition regardless of party affiliation and allowing voters to sign more than one petition. The Eleventh Circuit in Libertarian Party found that a 3% signature requirement was valid in light of factors that eased the burden of getting signatures and

9

compelling state interests. 710 F.2d at 794–95. Here, there are no identical alleviating factors, as all 250 petition signers must be members of the new party.

Relatedly, this Court may consider whether the state regulation diminishes the available pool of signatures. For example, in Storer, the challenged statute disqualified any voter who had voted in a partisan primary. 415 U.S. at 740–41. The South Dakota statute at issue here requires that a signatory be a registered voter of the new political party and limits a registered voter to signing only one petition. SDCL § 12-5-1.4; § 12-6-8. Although the Supreme Court found that disqualifying those who voted in a partisan primary from being eligible to sign the petition for the Independent Party was not itself unconstitutional, the Court stated that "it should be determined whether the available pool is so diminished in size by the disqualification . . . that the 325,000-signature requirement, to be satisfied in 24 days, is too great a burden on the independent candidates . . . ." Storer, 415 U.S. at 740 (noting that gathering 325,000 signatures in 24 days "would not appear to be an impossible burden"). Here, the pool is not so diminished that the 250-signature requirement becomes unreasonable.

This Court also may consider past experience, that is, whether a minority-party candidate has been successful in the past at obtaining access to the general ballot, as well as the relationship between the showing of support through a petition requirement and the percentage of the votes the candidate is expected to receive in the general election. Id. at 742–43. The Constitution Party of South Dakota first became a political party in 2004, and succeeded in putting its candidate's name on the gubernatorial ballot in 2006 through the petition process. Doc. 8-1 at 2. The Constitution Party gubernatorial candidate did not receive 2.5% of the gubernatorial vote, so the Constitution Party lost its status as a political party in South Dakota

and had to refile to become a new political party. Doc. 8-1 at 2. The Constitution Party's ability, however, to obtain access to the general ballot in 2006 suggests that the petition requirement is not excessive and sets a reasonable threshold of sufficient support to justify inclusion on the ballot.

In the analogous case of New York State Board of Elections v. Lopez Torres, 552 U.S. 196 (2008), the Supreme Court of the United States considered a state law requiring an individual running for delegate to file a petition signed by 500 enrolled party members residing in the assembly district approximately two months before the delegate primary. Id. at 200. The delegate candidates had a 37-day window to obtain the 500 signatures of party members from their district. Id. The Supreme Court found the state-imposed ballot-access requirement to be "far from excessive" and within the State's authority to demand a person to show a "minimum degree of support for candidate access to a primary ballot." Id. at 204.

The ballot-access requirement that Haan claims to be unconstitutional is similar to the statute in Lopez Torres. The requirements to file a petition with 250 signatures of the new party members in order to gain access to the primary election ballot is half the number of the "entirely reasonable" 500-signature requirement in Lopez Torres. Id. The delegate candidates in Lopez Torres had to collect 500 signatures from enrolled party members within their district, and there were 150 assembly districts in New York. Id. at 200. The burden on a delegate candidate to collect 500 signatures from party members living in one of 150 assembly districts is greater than the burden imposed on a gubernatorial candidate in South Dakota to collect 250 signatures from new party members living anywhere in South Dakota. As explained in Lopez Torres, the State's authority to require candidates to demonstrate "a significant modicum of support" before they

11

may gain access to the ballot applies equally to primary elections. <u>Id.</u> at 204 (citation omitted). The signature requirement imposed by SDCL section 12-5-1.4(1) is a reasonable, nondiscriminatory means of achieving the state interest in requiring a minimum degree of support before placing a candidate on the primary ballot. <u>See</u> <u>Am. Party of Tex. v. White</u>, 415 U.S. 767, 782–83 (1974) (upholding state requirement that gubernatorial candidate gather signatures equaling 1% of vote from previous election); <u>Jenness</u>, 403 U.S. at 442 (upholding state requirement that minor party candidates file nominating petition with 5% of eligible voters' signatures).

Haan argued that the 250 petition signatures required from Constitution Party members to gain access to the South Dakota ballot is unconstitutional because the Constitution Party had only between 400 and 600 members in South Dakota at the time. Thus, a candidate for the Constitution Party had to obtain at the time a high percentage of the party membership. Haan cited no cases where a court has struck down a similar statute based on such an analysis. Haan managed in seven days to collect 140 signatures of Constitution Party members on his nominating petition and may have succeeded in getting 250 such signatures if he had started earlier. When viewed more broadly, the 250-signature requirement is a reasonable and nondiscriminatory means of requiring South Dakotans wanting to run on a party ticket for Congress to demonstrate a modicum of support in order to justify ballot access. <u>See</u> <u>Jenness</u>, 403 U.S. at 442. The number 250 is merely .03125% of the South Dakota population,[1] .07451% of

---

[1] The population of South Dakota is approximately 800,000. American FactFinder, United States Census Bureau, http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk (last visited Sept. 18, 2014).

the number of voters who voted in the 2006 gubernatorial race,[2] and far fewer than the 2.5% of the voters of the State of South Dakota that the Constitution Party had to collect to organize as a party under SDCL section 12-5-1. The fact that the 250-signature requirement reflects such a high proportion of Constitution Party members is due to the small number of Constitution Party registered members in South Dakota and not evidence of the unconstitutionality of the South Dakota statutes.

This Court is sensitive to and mindful of the difficulties faced by minor-party candidates who, unlike candidates of major political parties, usually are not well-financed and lack access to resources available to established political parties. Nevertheless, this Court finds the 250-signature requirement to be reasonable. By mandating that a potential candidate for Congress file a nominating petition containing 250 signatures from members of the candidate's political party, the State achieves its regulatory interest in candidates attaining a sufficient modicum of support prior to being listed on the ballot. As explained above, because the signature requirement imposes only reasonable and nondiscriminatory restrictions, the State's regulatory interests are sufficient here to justify the restrictions.

Despite failing to file a nominating petition with 250 signatures of Constitution Party members, Haan argues that he was automatically nominated pursuant to SDCL section 12-6-9 and became the Constitution Party's nominee for the United States House of Representatives when Stacey, Chairwoman of the Constitution Party of South Dakota, certified him as a candidate to Gant. South Dakota law, however, recognizes only two ways that individuals can

---

[2]The total number of voters in South Dakota in the gubernatorial race was 335,508. Constitution Party of S.D. v. Nelson, 730 F. Supp. 2d 992, 1006 n.3 (D.S.D. 2010), affirmed in part and vacated in part, 639 F.3d 417 (8th Cir. 2011).

13

become candidates for office. First, through the primary election process found at SDCL Chapter 12-6, candidates for offices such as governor and for Congress may gain ballot access. By the effort to obtain 250 signatures of Constitution Party members, Haan was attempting to place his name in a primary and in turn on the general election ballot. A second way of becoming a candidate is by party nomination at a convention under SDCL Chapter 12-5. Nominations by party convention, however, may only be made for the following offices:

> lieutenant governor, attorney general, secretary of state, state auditor, state treasurer, commissioner of school and public lands, and public utilities commissioner and in the years when a President of the United States is to be elected, presidential electors and national committeeman and national committeewoman of the party.

SDCL § 12-5-21. The office of United States House of Representatives is not listed in SDCL section 12-5-21.

Under South Dakota law, candidates for the United States House of Representatives are chosen by the primary process. There is no state law authorizing the Secretary of State to place a candidate for the United States House of Representatives on the ballot by party nomination alone. Id. §§ 12-5-21, 12-6-1. As such, nominees for the office of United States House of Representatives are subject to the primary process found in SDCL Chapter 12-6. Accordingly, Stacey's certification of Haan as a Constitution Party candidate, even if the Constitution Party had held a convention, does not entitle him to be on the general election ballot for the United States House of Representatives. Haan has made no argument, other than what has been addressed above, regarding the constitutionality of this restriction on nominations from party conventions.

## IV. Conclusion

For the reasons explained above, it is hereby

ORDERED that Gant's motion for summary judgment, Doc. 7, is granted based on Rule 56 of the Federal Rules of Civil Procedure. It is further

ORDERED that Haan's Petition for Writ of Mandamus is denied and dismissed.

Dated September 23rd, 2014.

BY THE COURT:

*[signature]*

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE